Jonathan P. Ibsen, Esq. (AZ Bar No. 023284)
Matthew S. Hilscher, Esq (AZ Bar No. 027485)
CANTERBURY LAW GROUP, LLP
14300 N Northsight Boulevard, Suite 115
Scottsdale, Arizona 85260
Office: (480) 744-1177
Jibsen@clgaz.com
Special Counsel for Chapter 11 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SPG HOSPICE, LLC,<br><br>SCOTTSDALE PHYSICIANS GROUP, PLC,<br><br>UNITED TELEHEALTH CORP,<br><br>　　　　Debtors. | Chapter 11 Proceedings<br>**(Jointly Administered Under Case No. 2:22-bk-02385-EPB)**<br><br>Case No. 2:22-bk-02385-EPB<br><br>Case No. 2:22-bk-02388-EPB<br><br>Case No. 2:22-bk-02409-EPB |
| This matter applies to:<br>☒ SPG Hospice, LLC<br>☒ Scottsdale Physicians Group, PLC<br>☒ United Telehealth Corp | |
| JAMES E. CROSS, as TRUSTEE for United Telehealth Corporation<br><br>　　　Plaintiff,<br><br>v.<br><br>TINA BUTE and JOHN BUTE | Adv. Pro No. |

**COMPLAINT FOR: (i) PRELIMINARY INJUNCTION TO PREVENT IRREPARABLE HARM TO ESTATE ASSETS PURSUANT TO BANKRUPTCY RULE 7065;
(ii) TORTIOUS INTEFERENCE WITH CONTRACT; and
(iii) BREACH OF CONTRACT.**

James E. Cross, the duly appointed Chapter 11 Trustee herein ("Trustee") for United Telehealth Corp ("UTC") as and for his Complaint against the defendants captioned above (the "Defendants"), alleges:

## NATURE OF THE ACTION

1) This adversary proceeding arises out former employee Tina Bute's ("Bute) conduct in ignoring the non-compete provisions of her employment agreement dated December 12, 2019 (the "Employment Agreement"), and upon her departure from UTC, going to work for a competing entity, Prestige Healthcare ("Prestige"), which upon information and belief is owned and/or managed by Nima Ghadimi ("Ghadimi") and Bryan Hooppaw ("Hooppaw").

2) In so doing, Bute has violated the provisions of the Employment Agreement. Moreover, upon information and belief, she has tortiously interfered with the Debtors' business relations by improperly soliciting UTC employees to go work for Prestige, and/or by soliciting UTC's clients.

3) Absent this Court issuing a Preliminary Injunction stopping Bute, the Debtors will be irreparably harmed by the continued diminution of UTC's contracts, operations and employees.

## THE PARTIES

4) Plaintiff, James E. Cross was appointed as the Chapter 11 Trustee for the Debtors on April 28, 2022.

5) Defendant, Bute was formerly the Office Manager/Director of Client Support for UTC.

6) Defendant John Bute is, and was at all relevant times, married to Tina Bute. John Bute is named solely to bind the community property of the Bute's, if any. Upon information and belief, all of Bute's actions complained of herein were performed for her own benefit and on behalf of her marital community.

2

## JURISDICTION AND VENUE

7) This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b) and 1334(b).

8) This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) (E), (H), (K), and (O).

9) Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

10) This adversary proceeding seeks relief pursuant to, inter alia, §§ 105, 510, 548 and 550 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11) United Telehealth Corporation ("UTC") was incorporated in Arizona on June 18, 2019. It has operated continuously as a telemedicine service located in Scottsdale, Arizona, but providing services throughout the state of Arizona.

12) On December 12, 2019, and prior to her commencing employment with UTC, Bute entered into the Employment Agreement.

13) A true and correct copy of the Employment Agreement is annexed hereto as Exhibit "A."

14) Paragraph 4 of the Employment Agreement broadly defines trade secrets and protected information as follows:

> 4. CONFIDENTIALITY/TRADE SECRETS. Employee acknowledges that his/her position with UTC will be one of the highest trust and confidence both by reason of his/her position and by reason of his/her access to and contact with the trade

3

secrets and confidential and proprietary business information of UTC and all of its Affiliates. For purposes of this Agreement, confidential and proprietary business information means information (including information created by Employee) that gives UTC a competitive advantage in the marketplace, and which is not generally known about UTC or its business outside of UTC, including without limitation, the identity of UTC's customers, patients, and suppliers, UTC's arrangements with its customers, patients, and suppliers, and UTC's technical data, records, compilations of information, processes, computer software, and specifications relating to UTC's customers, patients, suppliers, products and services. Employee covenants and agrees that during the term of this Agreement and thereafter:

15) Paragraph 5 of the Employment Agreement provides, as follows:

> 5. COVENANT NOT TO DISCLOSE OR PIRATE PATIENTS. During the term of this Agreement and for a period of twelve (12) months thereafter or, in the event any reviewing court finds twelve (12) months to be unenforceable, for nine (9) months thereafter, or, in the event any reviewing court finds nine (9) months to be unenforceable, for six (6) months thereafter (the "Time Limit"), Employee shall not directly or indirectly:
>
> 5.1 Interfere with any contractual or business relationship that may exist between UTC or any of its Affiliates and any person or entity who is now, or who becomes during the term of this Agreement, a customer, client or patient of UTC or any of its Affiliates or disclose the identity of any such customer, client or patient of UTC or any of its Affiliates to any person, firm or corporation engaged in a business the same or similar to or in competition with UTC or any of its Affiliates;
>
> 5.2 Solicit or canvass or authorize any other persons to solicit or canvass any customers, clients or patients (including past customers, clients, or patients to whom UTC provided any services within the twelve (12) month period preceding the termination of Employee's relationship with UTC) of UTC or any of its Affiliates to do or engage in business with any other person, firm or corporation engaged in a business the same as or similar to or in competition with UTC or any of its Affiliates' business within Maricopa County, Arizona, or, in the event any reviewing court finds Maricopa County to be unenforceable, within a ten (10) mile radius of any medical facility at which Employee regularly provided Employee services on behalf of UTC, or, in the event any reviewing court finds a ten (10) mile radius to be unenforceable,

4

within a five (5) mile radius of any medical facility at which Employee regularly provided Employee services on behalf of UTC;

5.3 Induce or attempt to influence any employee of UTC or any of its Affiliates to terminate his/her or her employment to work for any business the same as or similar to or in competition with UTC or any of its Affiliates; or

5.4 Use any corporate, fictitious or trade name now being or hereafter used or owned by UTC or any of its Affiliates or any name confusingly similar to any such name.

16) Paragraph 6.2 of the Employment Agreement provides:

6.2 Employee agrees that UTC shall be entitled to preliminary and permanent injunctive relief (upon proper notice to Employee and a hearing before a court of competent jurisdiction) including, but without limitation, the right to obtain a temporary restraining order (but not without notice and a hearing as set forth above), as well as an equitable accounting of any or all earnings, profits and other benefits arising from such alleged violation, which rights shall be cumulative and in addition to any other rights or remedies to which UTC may be entitled.

17) Paragraph 6.4 of the Employment Agreement provides:

6.4 Should Employee violate the covenants described in Section 5, UTC shall have the right to seek injunctive relief and Employee shall, in addition, pay UTC Ten Thousand Dollars ($10,000.00), not as a penalty, but as agreed liquidated damages to UTC for injury to UTC's practice.

18) On information and belief, during June, 2022 Ghadimi and Hooppaw formulated a plan to form an entity to, in essence, compete with UTC and convert UTC's business, and began operations through Prestige.

19) On June 30, 2022 Bute, gave her notice that she was terminating her employment with UTC.

20) That same day, Nick Vondra, the former Operations Manager for UTC gave his notice that he was terminating his employment with UTC.

5

21) Subsequent to Bute's separation from UTC, the Trustee has been provided with information that:

    a. Hooppaw had previously contacted Vondra and advised him that he and Ghadimi were forming a competing company to take business away from UTC;

    b. That Vondra and Bute were going to work for the Hooppaw/Ghadimi entity – Prestige Virtual Care; ("Prestige")

    c. That Hooppaw would be reaching out to other employees to induce them to leave UTC to work for Prestige.

    d. That Hooppaw was provided with the phone numbers for UTC's Schedulers and Lead Technicians for the purpose of contacting them to induce them to go to work for Prestige.

22) After Bute's departure the Trustee discovered that, in addition to Bute, each of the employees shown on Prestige's website were either an employee, officer or professional of the Debtors, including:

| | |
|---|---|
| ➢ Nima Ghadimi | Debtor's Equity Holder and Former Officer; |
| ➢ Bryan Hooppaw | Former accounting professional for the Debtors; |
| ➢ Nick Vondra | Former UTC Employee; |
| ➢ Lavette Waln | Former UTC Employee; |
| ➢ Larissa Waln | Former UTC Employee; |
| ➢ Averi Welsh | Former UTC Employee; and |
| ➢ Ashley Richter | Former UTC Employee. |

6

Case 2:22-ap-00211-EPB    Doc 1    Filed 09/12/22    Entered 09/12/22 20:03:21    Desc
Main Document    Page 6 of 11

23) A true and correct copy of screenshots of Prestige's website are collectively annexed hereto as Exhibit "B."

24) On information and belief, Bute participated in soliciting some of the former UTC employees referenced in paragraph 28 to work for Prestige.

25) Such solicitation violates paragraph 5.1 of the Employment Agreement.

26) On information and belief, Bute is improperly using UTC's confidential and proprietary business information in her role at Prestige, in violation of the provisions of paragraphs 4 and 4.2 and 5.1 of the Employment Agreement.

27) The Trustee further became aware that Bute was directly soliciting current patients of UTC by causing Prestige advertising materials to be left at skilled nursing facilities maintained by the Debtors, and from which UTC gets patient referrals.

28) The solicitation of these patients/business relationships violates paragraphs 4 and 5 of the Employment Agreement.

29) On August 17, 2022, Undersigned Counsel sent a cease-and-desist demand to Bute, copied to Ghadimi (through his counsel) and Hooppaw (the "Cease & Desist Demand"). A copy of the Cease & Desist Demand is annexed hereto as Exhibit "C."

30) On August 26, 2022, Bute responded to the Cease & Desist Demand, refusing to comply with the provisions therein, thereby necessitating the commencement of this Adversary Proceeding.

7

## FIRST CLAIM FOR RELIEF
### (Temporary Restraining Order Pursuant to Bankruptcy Rule 7065)

31) Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 30 of this Complaint as though set forth at length herein.

32) Plaintiff requests a temporary restraining order with notice pursuant to Bankruptcy Rule 7065(b).

33) Bute has violated paragraphs 4, 4.2 and 5.1 of the Employment Agreement.

34) Paragraph 6.2 of the Employment Agreement provides for a preliminary and permanent injunction against Bute for violations thereof.

35) Plaintiff asserts that the Debtors would suffer irreparable harm if this Court does not issue a temporary restraining order to preclude the Bute from:

    a. Inducing any more of the Debtors' employees to leave the Debtors' employ and work for Prestige;

    b. Interfering with the Debtors' business relationships by soliciting, or causing the soliciting of any of UTC's patients to instead go to Prestige; and

    c. Utilizing UTC's confidential business information in her employment at Prestige.

36) Bute has acted in bad faith in the actions.

37) But acted intentionally and knowingly with regard to the aforementioned actions.

8

38) As direct and proximate result of these actions, the Debtors suffered and continue to suffer harm, which will be irreparable if allowed to continue.

**SECOND CLAIM FOR RELIEF**
**(Tortious Interference)**

39) Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 38 of this Complaint as though set forth at length herein.

40) Upon information and belief, Bute has interfered and continues to interfere with the Debtors' business relationships by, *inter alia*:

   a. Inducing more of the Debtors' employees to leave the Debtors' employ and work for Prestige;
   b. Interfering with the Debtors' business relationships by soliciting, or causing the soliciting of any of UTC's patients to instead go to Prestige; and
   c. Utilizing UTC's confidential business information in her employment at Prestige.

41) Bute had knowledge of the existing employment relationships between UTC's former employees and UTC.

42) Bute had knowledge that the patients that were attempted to be solicited were patients at one of the Debtors' located at skilled nursing facilities serviced by the Plaintiff's employees.

43) The Bute has committed overt acts of interference.

44) In the absence of immediate relief enjoining Bute from further interfering with UTC's business relationships, the Debtors will suffer irreparable harm for which there is no adequate remedy at law.

45) The Debtors seek injunctive relief against this conduct.

46) As direct and proximate result of these actions, the Debtors suffered and continue to suffer harm and are entitled to recover damages against Defendants, in the amount of $10,000 in liquidated damages set forth in paragraph 6.2 of the Employment Agreement, or alternatively in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract)**

47) Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 of this Complaint as though set forth at length herein.

48) Bute willingly entered into the Employment Agreement with UTC.

49) Bute defaulted upon and breached her obligations due UTC by, among other things:

    a. Inducing any more of the Debtors' employees to leave the Debtors' employ and work for Prestige;

    b. Interfering with the Debtors' business relationships by soliciting, or causing the soliciting of any of UTC's patients to instead go to Prestige; and

    c. Utilizing UTC's confidential business information in her employment at Prestige.

10

50) UTC performed all conditions precedent required to be performed by it, or they have occurred prior to Bute's breaches.

51) As direct and proximate result of these breaches, the Debtors suffered and continue to suffer harm and are entitled to recover damages against Defendants, in the amount of $10,000 in liquidated damages set forth in paragraph 6.2 of the Employment Agreement, or alternatively in an amount to be proven at trial, including attorneys' fees and costs pursuant to A.R.S § 12-341.01.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests entry of a judgment in its favor on all counts as set forth above

DATED this 12th day of September 2022.

                                          **Canterbury Law Group, LLC**

                                          /s/ Jonathan P. Ibsen
                                          Special Counsel for the
                                          Chapter 11 Trustee

11